| | |
|---|---|
| 7TH JUDICIAL DISTRICT COURT, GUNNISON COUNTY, STATE OF COLORADO<br>200 E. Virginia Avenue<br>Gunnison, CO 81230<br><br>**PLAINTIFF:** SEAN NELSON, Individually and for Others Similarly Situated<br><br>**v.**<br><br>**DEFENDANT:** CORE NATURAL RESOURCES, INC. f/k/a ARCH RESOURCES, INC. | DATE FILED<br>April 15, 2025 2:56 PM<br>FILING ID: C7407777727C7<br>CASE NUMBER: 2025CV30015<br><br><br><br>☐   COURT USE ONLY   ☐ |
| Attorneys for Plaintiff:<br><br>Brian D. Gonzales, Atty. Reg. # 29775<br>**BRIAN D. GONZALES, PLLC**<br>2580 East Harmony Road, Suite 201<br>Fort Collins, Colorado 80528<br>Phone: (970) 214-0562<br>BGonzales@ColoradoWageLaw.com<br><br>Michael A. Josephson*<br>Andrew W. Dunlap*<br>**JOSEPHSON DUNLAP LLP**<br>11 Greenway Plaza, Suite 3050<br>Houston, Texas 77046<br>Phone: (713) 352-1100<br>Fax:     (713) 352-3300<br>mjosephson@mybackwages.com<br>adunlap@mybackwages.com<br><br>Richard J. (Rex) Burch*<br>**BRUCKNER BURCH PLLC**<br>11 Greenway Plaza, Suite 3025<br>Houston, Texas 77046<br>Phone: (713) 877-8788<br>Fax:     (713) 877-8065<br>rburch@brucknerburch.com<br><br>*Pro hac vice applications forthcoming* | Case Number:<br><br><br><br>Ctrm/Div: |
| **ORIGINAL CLASS ACTION COMPLAINT & JURY DEMAND** | |

## SUMMARY

1. Sean Nelson (Nelson) brings this class action to recover unpaid wages and other damages from Core Natural Resources, Inc. f/k/a Arch Resources, Inc. (Core).

2. Core employs Nelson as one of its Hourly Employees (defined below) in its Gunnison County, Colorado underground coal mine.

3. Nelson and the other Hourly Employees regularly work more than 40 hours a workweek.

4. Core pays Nelson and the other hourly employees by the hour.

5. However, Core does not pay Nelson and the other Hourly Employees for all their hours worked, including overtime hours.

6. Rather, Core requires Nelson and the other Hourly Employees to suit out in protective clothing and safety gear necessary to perform their jobs and gather and prepare tools and equipment necessary to perform their jobs, while on Core's premises, "off the clock."

7. Likewise, Core requires Nelson and the other Hourly Employees to change out of and store their safety gear and protective clothing, store their tools and equipment, and wash-up, while on Core's premises, "off the clock."(¶¶ 6-7 together, Core's "pre/post shift off the clock policy").

8. But Core does not pay Nelson and the other Hourly Employees for the time they spend donning and doffing their safety gear and protective clothing, gathering and storing tools and other equipment, and washing-up, "off the clock," before and after their shifts.

9. Additionally, Core pays Nelson and the other Hourly Employees non-discretionary bonuses that it fails to include in their regular rates of pay for overtime purposes. (Core's "bonus pay scheme").

10. Core's pre/post shift off the clock policy and bonus pay scheme violate the Colorado Wage Claim Act (CWCA), Colorado Minimum Wage Act (CMWA), and their implementing regulations (COMPS Orders) by failing to compensate Nelson and the other Hourly Employees for all hours worked and at 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 a workweek (and 12 in a workday).

11. Additionally, Core does not authorize, permit, or make available uninterrupted and duty-free meal periods to Nelson and the other Hourly Employees for each workday that exceeds 5 hours.

12. Likewise, Core does not authorize or permit Nelson and the other Hourly Employees to take a *bona fide* 10-minute rest period for each 4 hours worked or major fraction thereof.

13. Core does not provide compensation to Nelson and the other Hourly Employees for the meal and rest periods it fails to provide and/or make available, in violation of Colorado law.

## JURISDICTION & VENUE

14. This Court has subject matter jurisdiction pursuant to COLO. CONST. ART. VI § 9(1) because this case arises under Colorado law, and Core's violative conduct occurred in Colorado.

15. This Court has personal jurisdiction over Core based on Core's substantial operations in Colorado and its substantial contacts with, and conduct directed toward Colorado that form the basis of this class action. C.R.S. § 13-1-124.

16. Venue is proper pursuant to C.R.C.P. 98 because some part of the claim arose in Gunnison County.

## PARTIES

17. Core[1] has employed Nelson as a longwall headgate operator since approximately October 2003.

18. Throughout his employment, Core subjected Nelson to its pre/post shift off the clock policy, bonus pay scheme, and likewise did not provide or make available *bona fide* meal and/or rest breaks.

19. Nelson brings this class and collective action on behalf of himself and other Core employees on whom Core imposed its pre/post shift off the clock policy on and/or paid under its bonus pay scheme.

20. Nelson likewise brings this action on behalf of Colorado employees who did not receive *bona fide* meal and/or rest breaks.

21. The putative Colorado class of similarly situated employees is defined as:

> **All hourly employees who worked for Core in Colorado during the last six years through final resolution of this action. (the "Hourly Employees").**

22. Core is a Pennsylvania corporation with its principal place of business in Canonsburg, Pennsylvania.

23. Core may be served with process through its registered agent: **CT Corporation System, 600 N. 2nd Street, Suite 814, Harrisburg, Pennsylvania 17101**.

---

[1] CONSOL Energy Inc. and Arch Resources, Inc. merged to form Core, effective January 14, 2025. Prior to this date, Arch employed Nelson. *See*, https://investor.archrsc.com/2025-01-14-Successful-Completion-of-Merger-Creating-Core-Natural-Resources (last visited March 21, 2025).

## FACTS

24. Core came into being through a "merger of equals" between Arch Natural Resources, Inc. and CONSOL Resources, Inc., and states "[t]he Core team is off to an excellent start in integrating the combined operating, marketing and logistics portfolio into a cohesive, high-performing unit."[2]

25. Core touts that it "owns and operates 11 mines, including 8 longwalls. Within our operating footprint, our High CV thermal and metallurgical coal offerings represent some of the highest-quality coals in the world."[3]

26. Core further states that it operates "operates a best-in-sector portfolio, including the Pennsylvania Mining Complex, Leer, Leer South, and West Elk mines."[4]

27. Core further states that it "employ[s] over 5,000 hardworking individuals across the U.S. in jobs that range from accountants to machine operators to environmental engineers."[5]

28. Core advertises and solicits job applicants across all of its locations through its website.[6]

29. To meet its business objectives, Core employs workers, including Nelson and the other Hourly Employees, to mine and process coal.

30. For example, Core has employed Nelson as a longwall headgate operator since approximately October 2003 in its West Elk mine located near Somerset, Colorado.

31. As a longwall headgate operator, Nelson's job duties include operating the longwall shearers to cut coal from the longwall face, as well as operating other longwall equipment, dismantling shields for longwall moves.

32. Nelson's job duties likewise include donning and doffing his safety gear and protective clothing, gathering, preparing, and storing tools and other equipment, and washing up, "off the clock," on Core's premises, before and after his scheduled shifts.

33. Nelson records his "on the clock" hours via Core's designated timekeeping system.

34. Thus, Core's records reflect the number of "on the clock" hours Nelson works each day and week.

---

[2] https://investor.archrsc.com/2025-01-14-Successful-Completion-of-Merger-Creating-Core-Natural-Resources; https://investors.corenaturalresources.com/2025-02-20-Core-Natural-Resources-Reports-Fourth-Quarter-2024-Results (last visited March 23, 2025).
[3] https://corenaturalresources.com/products/#industries-served (last visited March 23, 2025).
[4] https://corenaturalresources.com/about-core/#who-we-are (last visited March 23, 2025).
[5] https://corenaturalresources.com/careers/ (last visited March 23, 2025).
[6] *Id.*

35. Throughout his employment, Nelson has regularly worked more than 40 hours a workweek (and occasionally more than 12 hours a workday).

36. Indeed, throughout his employment, Nelson has typically worked 8 to 9 hours a day and 5 days a week (40 to 45 hours a workweek) "on the clock."

37. And Core pays Nelson approximately $37 an hour.

38. But throughout his employment, Core has not paid Nelson for all his hours worked.

39. Instead, throughout his employment, Core has subjected Nelson to its pre/post shift off the clock policy.

40. Specifically, Core requires Nelson to dress out in protective clothing and safety gear (including hard hat, head lamp, reflective clothing, ear protection, steel toed boots, safety glasses, gloves, self-contained self-rescuer, proximity detector, and GPS tracker) and gather and prepare tools, and equipment necessary to perform his job duties, such as hand tools and maintenance supplies, all "off the clock," on Core's premises and without compensation.

41. This takes Nelson approximately 30 to 40 minutes each workday.

42. Nelson cannot perform his job duties in accordance with Core's policies, procedures, and expectations without this protective clothing, safety gear, tools, and equipment.

43. Indeed, much of the gear Nelson utilized is mandated by federal regulation. *See* 29 C.F.R. § 1910.132; 30 C.F.R. § 75, *et seq*; 30 C.F.R. § 77, *et seq*.

44. The donning of protective clothing and safety gear and gathering other tools and equipment are therefore integral and indispensable work duties for Nelson.

45. Likewise, Core requires Nelson to remove and store his safety gear, protective clothing, and other tools and equipment, and wash up each day after his shift, all "off the clock," while on Core's premises, and without compensation.

46. This takes Nelson approximately 30 to 40 minutes each workday.

47. Nelson could not perform his job duties in accordance with Core's policies, procedures, and expectations without removing and storing this safety gear and protective clothing, storing his tools and equipment, and washing up each workday.

48. Nelson could not safely perform his job duties in accordance with Core's policies, procedures, and expectations without removing and storing this safety gear and protective clothing and washing up each workday.

49. The removal and storage of safety gear and protective clothing, other tools and equipment, and washing up each day are therefore integral and indispensable work duties for Nelson.

50. But under its pre/post shift off the clock policy, Core did not compensate him for the same.

51. Thus, because of its pre/post shift off the clock policy, Core failed to pay Nelson overtime wages for all hours worked, including overtime hours worked during workweeks Nelson worked in excess of 40 hours (and occasionally more than 12 hours in a workday).

52. Additionally, Core does not authorize, permit, or make available to Nelson duty-free, uninterrupted 30-minute meal periods during each shift exceeding 5 hours.

53. Nelson does not receive duty-free, uninterrupted meal periods.

54. The nature of the work Nelson performed does not make an uninterrupted meal period impractical.

55. To meet Core's strict productivity requirements, Nelson is regularly forced to perform his regular work duties without a *bona fide* meal period. *See* 7 C.C.R. 1103-1 (5.1).

56. Core fails to compensate Nelson for his missed meal periods.

57. Similarly, Core does not authorize and permit Nelson to take *bona fide* 10-minute rest periods for every 4 hours worked or major fraction thereof. *See* 7 C.C.R. 1103-1 (5.2).

58. And Core fails to compensate Nelson for his missed rest periods.

59. Nelson and the other Hourly Employees perform their jobs under Core's supervision and use materials, equipment, and technology Core approves and supplies.

60. Core requires Nelson and the other Hourly Employees to follow and abide by common work, time, pay, and overtime policies and procedures in the performance of their jobs.

61. Nelson's and the other Hourly Employees' work must strictly adhere to the uniform standards put in place by Core.

62. At the end of each pay period, Nelson and the other Hourly Employees receive wages from Core that are determined by common systems and methods that Core selects and controls.

63. Likewise, the other Hourly Employees typically work 5 days a week for 8 to 9+ hours (and occasionally over 12 hours) a day (40 to 45+ hours a week) "on the clock."

64. But, just as with Nelson, Core fails to pay them for all their hours worked.

65. Indeed, Core uniformly subjects the other Hourly Employees to the same or similar pre/post shift off the clock policy it imposes on Nelson.

66. Specifically, just as with Nelson, Core requires them to dress out in their protective clothing and safety gear (including hard hat, head lamp, reflective clothing, ear protection, steel toed

boots, safety glasses, gloves, self-contained self-rescuer, proximity detector, and tracker), fundamentally necessary to performing their jobs and gather other tools and equipment, all "off the clock," on Core's premises and without compensation.

67. And Core requires them to remove and store their safety gear and protective clothing, as well as other gear, and wash up after their shifts, likewise, "off the clock" on Core's premises and without compensation.

68. And like Nelson, much of the gear they must utilize is mandated by federal regulation. *See* 29 C.F.R. § 1910.132; 30 C.F.R. § 75, *et seq*; 30 C.F.R. § 77, *et seq*.

69. But, like Nelson, the other Hourly Employees are regularly forced to perform this compensable work "off the clock" before and after their shifts.

70. Thus, just as with Nelson, Core does not pay the other Hourly Employees for this integral and indispensable work Core requires them to perform on its premises "off the clock" before and after their shifts.

71. And, just as with Nelson, these job duties take the other Hourly Employees approximately an hour to an hour and 20 minutes to complete each workday.

72. And just as with Nelson, the other Hourly Employees record their "on the clock" hours via Core's designated timekeeping system.

73. Additionally, just as with Nelson, Core does not authorize, permit, or make available to the other Hourly Employees work-free and uninterrupted 30-minute meal periods during shifts exceeding 5 hours.

74. Instead, like Nelson, to complete their job duties in accordance with Core's policies, procedures, standards, and expectations, the other Hourly Employees are forced to perform their regular work duties and responsibilities throughout their shifts.

75. And, as with Nelson, the nature of the work the other Hourly Employees perform does not make uninterrupted meal periods impractical.

76. Core fails to compensate the Hourly Employees for their missed meal periods.

77. Similarly, Core does not authorize or permit the other Hourly Employees to take *bona fide* 10-minute rest periods for every 4 hours worked or major fraction thereof.

78. And Core fails to compensate them for their missed rest periods.

79. Rather, like Nelson, the other Hourly Employees spend their entire workdays working on behalf of Core for its primary benefit.

80. Core fails to exercise its duty as the Hourly Employees' employer to ensure they are not performing work "off the clock," on its premises that Core does not want performed.

81. And Core knows, should know, or recklessly disregards whether Nelson and the other Hourly Employees routinely perform integral and indispensable work "off the clock," and without compensation, before and after their scheduled shifts.

82. Thus, Core requires, requests, suffers, or permits Nelson and the other Hourly Employees to work "off the clock," without compensation, on its premises, before and after their scheduled shifts.

83. Despite accepting the benefits, Core does not pay Nelson and the other Hourly Employees for the compensable work they perform "off the clock."

84. Thus, under Core's uniform pre/post shift off the clock policy, Nelson and the other Hourly Employees are denied wages, including overtime wages, for compensable work.

85. And throughout their employment, Core has not paid Nelson and the other Hourly Employees at the required premium rate for all hours worked in excess of 40 in a workweek (and 12 in a workday).

86. Instead, Core pays Nelson and the other Hourly Employees under its bonus pay scheme.

87. Specifically, Core pays Nelson and the other Hourly Employees non-discretionary bonuses, including safety and production bonuses determined by metrics set by Core, that it fails to include in these employees' regular rates of pay for overtime purposes.

88. Thus, under Core's bonus pay scheme, it does not pay Nelson and the other Hourly Employees overtime wages at the required rates—based on all remuneration—for all hours they work in excess of 40 a workweek (and over 12 in a workday).

89. The Hourly Employees are thus uniformly subject to the same or similar unlawful policies—Core's pre/post shift off the clock policy and bonus pay scheme—for similar work, in willful violation of Colorado law.

## CLASS ACTION ALLEGATIONS

90. Nelson brings his claims as a class action under the CWCA, CMWA, and COMPs Orders pursuant to C.R.C.P. 23.

91. Like Nelson, the other Hourly Employees are victimized by Core's pre/post shift off the clock policy and bonus pay scheme.

92. Other Hourly Employees worked with Nelson and indicated they were paid in the same manner, performed similar work, and were subject to Core's same pre/post shift off the clock policy and bonus pay scheme.

93. Based on his experience with Core, Nelson is aware Core's pre/post shift off the clock policy and bonus pay scheme were imposed on other Hourly Employees.

94. The Hourly Employees are similarly situated in the most relevant respects.

95. Even if their precise job duties and locations vary, these differences do not matter for the purposes of determining their entitlement to wages, including overtime wages at the required premium rate for all overtime hours worked.

96. Therefore, the specific job titles or job locations of the Hourly Employees do not prevent class or collective treatment.

97. Rather, Core's pre/post shift off the clock policy and bonus pay scheme render Nelson and the other Hourly Employees similarly situated for the purpose of determining their right to overtime wages at the required rate for all overtime hours worked.

98. Core's records reflect the number of "on the clock" hours the Hourly Employees recorded working each week.

99. Core's records also show it paid the Hourly Employees non-discretionary bonuses it failed to include in their regular rates of pay.

100. The back wages owed to Nelson and the other Hourly Employees can therefore be calculated using the same formula applied to the same records.

101. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Core's records, and there is no detraction from the common nucleus of liability facts.

102. Therefore, the issue of damages does not preclude class treatment.

103. Nelson's experiences are therefore typical of the experiences of the other Hourly Employees.

104. Nelson has no interest contrary to, or in conflict with, the other Hourly Employees that would prevent class treatment.

105. Like each Hourly Employee, Nelson has an interest in obtaining the unpaid wages owed under Colorado law.

106. Nelson and his counsel will fairly and adequately protect the interests of the Hourly Employees.

107. Nelson retained counsel with significant experience in handling complex class action litigation.

108.     Absent this class action, many Hourly Employees will not obtain redress for their injuries, and Core will reap the unjust benefits of violating Colorado law.

109.     Further, even if some of the Hourly Employees could afford individual litigation, it would be unduly burdensome to the judicial system.

110.     Indeed, the multiplicity of actions would create hardship to the Hourly Employees, the Court, and Core.

111.     Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Hourly Employees' claims.

112.     The questions of law and fact that are common to each Hourly Employee predominate over any questions affecting solely the individual members.

113.     Among the common questions of law and fact are:

   a.   Whether Core imposed its pre/post shift off the clock policy on the Hourly Employees;

   b.   Whether Core's pre/post shift off the clock policy deprived the Hourly Employees of wages, including overtime wages for overtime hours worked;

   c.   Whether Core paid the Hourly Employees non-discretionary bonuses;

   d.   Whether Core engaged in a policy or practice of failing to include non-discretionary bonuses in the Hourly Employees' regular rates of pay for overtime purposes;

   e.   Whether Core failed to pay the Hourly Employees overtime wages at the required premium rates—based on all remuneration—for all overtime hours worked;

   f.   Whether Core failed to provide meal and/or rest periods as required by Colorado law;

   g.   Whether Core's decision not to pay the Hourly Employees wages, including overtime wages, at the required rates—based on all remuneration—for all overtime hours worked was made in good faith; and

   h.   Whether Core's violations were willful?

114.     As part of its regular business practices, Core intentionally, willfully, and repeatedly violated Colorado law with respect to Nelson and the other Hourly Employees.

115. Core's pre/post shift off the clock policy and bonus pay scheme deprived Nelson and the other Hourly Employees of wages, including overtime wages at the required premium rate—based on all remuneration—for overtime hours worked, in willful violation of the Colorado law.

116. The Hourly Employees are known to Core, are readily identifiable, and can be located through Core's business and personnel records.

### CORE'S VIOLATIONS WERE WILLFUL

117. Core knew it employed the Hourly Employees.

118. Core knew it was subject to Colorado law's wages, meal/rest break, and overtime provisions.

119. Core knew Nelson and the other Hourly Employees were its non-exempt employees entitled to wages for all hours worked, including overtime wages, and meal and rest breaks.

120. Core knew Colorado law required it to pay non-exempt employees, including Nelson and the other Hourly Employees, wages for all hours worked and overtime wages at rates not less than 1.5 times their regular rates of pay—based on all remuneration—for all hours worked after 40 a workweek and 12 in a workday.

121. Core knew Nelson and each Hourly Employee worked more than 40 hours in at least one workweek and/or 12 hours in one workday during the last 3 years because Core recorded their "on the clock" hours via its timekeeping system.

122. Core knew it paid the Hourly Employees according to its pre/post shift off the clock policy.

123. Core knew it had a duty to ensure the Hourly Employees were not performing work "off the clock" (without pay).

124. Core knew it required the Hourly Employees to don and doff safety gear and protective clothing, gather and store other tools and equipment, and wash-up, "off the clock."

125. Core knew it controlled the Hourly Employees' work procedures.

126. Core knew the Hourly Employees' mandatory "off the clock" work was a fundamental requirement of their jobs with Core.

127. Core knew the Hourly Employees' mandatory "off the clock" work was integral and indispensable.

128. In other words, Core knew the Hourly Employees performed compensable work (*e.g.*, donning/doffing their safety gear and protective clothing, gathering and storing other tools and equipment, and washing-up) "off the clock" and without compensation.

129. Core knew the CWCA, CMWA, and COMPS Orders required it to pay employees, including Nelson and the other Hourly Employees, for all hours these employees performed compensable work.

130. Core knew it regularly did not authorize and permit Nelson and the other Hourly Employees to take *bona fide* rest periods for every four hours worked or major fraction thereof.

131. Core knew it did not provide Nelson and the other Hourly Employees additional compensation for their on-duty "rest periods."

132. Core knew it regularly did not authorize, permit, or make available to Nelson and the other Hourly Employees duty-free, uninterrupted meal periods during shifts exceeding five hours.

133. Core knew it did not provide Nelson and the other Hourly Employees additional compensation for their non-compliant "meal periods."

134. And Core knew the nature of the work Nelson and the other Hourly Employees performed did not make uninterrupted meal periods impractical under Colorado law.

135. Core knew it paid Nelson and the other Hourly Employees non-discretionary bonuses.

136. Core knew these non-discretionary bonuses were not included in Nelson's and the other Hourly Employees' regular rates of pay for the purpose of calculating their overtime rates of pay.

137. And Core knew Colorado law required it to pay Nelson and the other Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 in a workweek and 12 in a workday.

138. Core knew Nelson and the other Hourly Employees regularly worked in excess of 40 hours a workweek and 12 in a workday.

139. Thus, Core knew, should have known, or recklessly disregarded whether it failed to pay Nelson and the other Hourly Employees for all hours worked and at least 1.5 times their regular rates of pay—based on all remuneration—for all the hours they worked in excess of 40 in a workweek and 12 in a workday.

140. Core's failure to pay Nelson and the other Hourly Employees for all hours worked, including overtime at the required rates—based on all remuneration—for all overtime hours worked was neither reasonable, nor was this decision made in good faith.

141. Core knowingly, willfully, and/or in reckless disregard of Colorado law carried out its unlawful bonus pay scheme and pre/post shift off the clock policy that deprived Nelson and the other Hourly Employees of wages, including overtime wages at the required rate of pay—based on all remuneration—for all hours worked after 40 a workweek, in violation of Colorado law.

### COUNT I
### FAILURE TO PAY OVERTIME WAGES UNDER THE CWCA AND COMPS ORDERS
### (CLASS ACTION)

142. Nelson brings his CWCA overtime claim on behalf of himself and the other Hourly Employees pursuant to C.R.C.P. 23.

143. Core's conduct violated the CWCA, as implemented by the COMPS Orders. *See* C.R.S. §§ 8-4-101, *et seq*.; 7 C.C.R. 1103-1.

144. At all relevant times, Core was subject to the CWCA and the COMPS Orders because Core was (and is) an "employer" within the meaning of the CWCA and COMPS Orders. *See* C.R.S. § 8-4-101(6); 7 C.C.R. 1103-1(1.6).

145. At all relevant times, Core employed Nelson and the other Hourly Employees as its covered "employees" within the meaning of the CWCA and COMPS Orders. *See* C.R.S. § 8-4-101(5); 7 C.C.R. 1103-1(1.5).

146. The COMPS Orders require employers, like Core, to pay non-exempt employees, including Nelson and the other Hourly Employees, overtime wages at rates not less than 1.5 times their regular rates of pay, based on all compensation, for all hours worked over 12 in a workday and 40 in a workweek. *See* 7 C.C.R. 1103-1(4.1.1).

147. Nelson and the other Hourly Employees are entitled to overtime pay under the COMPS Orders. *See* 7 C.C.R. 1103-1(4.1.1).

148. Core violated the CWCA and COMPS Orders by failing to pay Nelson and the other Hourly Employees overtime wages at rates not less than 1.5 times their regular rates of pay, based on all compensation, for all hours worked over 12 in a workday and 40 in a workweek, including hours worked "off the clock" before and after their shifts and for denied "meal periods" and "rest periods," for which Core failed to compensate Nelson and the other Hourly Employees. *See* 7 C.C.R. 1103-1(4.1.1 and 5).

149. Core's unlawful conduct harmed Nelson and the other Hourly Employees by depriving them of the premium overtime wages they are owed.

150. Accordingly, Nelson and the other Hourly Employees are entitled to recover their unpaid overtime wages and an automatic penalty of the greater of two times the amount of the unpaid overtime wages or $1,000. *See* C.R.S. § 8-4-109(3)(b)(I); 7 C.C.R. 1103-1(8.1).

151. Because Core's failure to pay these overtime wages was willful, Core is also liable to Nelson and the other Hourly Employees for treble damages in the amount of three times their unpaid overtime wages or $3,000, whichever is greater. *See* C.R.S. § 8-4-109(3)(b)(II).

152. Finally, Nelson and the other Hourly Employees are entitled to recover their reasonable attorneys' fees, costs, and expenses incurred in this action. *See* C.R.S. § 8-4-110; C.C.R. 1103-1(8.1).

## COUNT II
### FAILURE TO PAY MINIMUM WAGES UNDER THE CMWA AND COMPS ORDERS
### (CLASS ACTION)

153. Nelson brings his CMWA minimum wages claim on behalf of himself and the other Hourly Employees pursuant to C.R.C.P. 23.

154. Core's conduct violated the CMWA, as implemented by the COMPS Orders. *See* 7 C.C.R. 1103-1(1.5).

155. At all relevant times, Core was subject to the CMWA because Core was (and is) an "employer" within the meaning of the CMWA. *See* 7 C.C.R. 1103-1(1.6).

156. At all relevant times, Core employed Nelson and the other Hourly Employees as its covered "employees" within the meaning of the CMWA. *See* 7 C.C.R. 1103-1(1.5 and 1.6).

157. The CMWA and COMPS Orders require employers, like Core, to pay employees, including Nelson and the other Hourly Employees, no less than the minimum hourly wage for all hours worked. *See* C.R.S. § 8-6-116; 7 C.C.R. 1103-1 (1.9 and 3).

158. Core violated the CMWA and COMPS Order by failing to pay Nelson and the other Hourly Employees minimum wages for all hours worked, including hours worked "off the clock" and during "meal and rest periods," for which Core failed to compensate Nelson and the other Hourly Employees. *See* 7 C.C.R. 1103-1(4.1.1 and 5).

159. Core's unlawful conduct harmed Nelson and the other Hourly Employees by depriving them of the minimum wages they are owed.

160. Accordingly, Nelson and the other Hourly Employees are entitled to recover their unpaid minimum wages and interest. *See* C.R.S. § 8-6-118.

161. Nelson and the other Hourly Employees are additionally entitled to recover their reasonable attorneys' fees, costs, and expenses incurred in this action. *See* C.R.S. § 8-6-118.

## COUNT III
### FAILURE TO PAY EARNED WAGES UNDER THE CWCA AND COMPS ORDERS
### (CLASS ACTION)

162. Nelson brings his CWCA earned wages claim on behalf of himself and the other Hourly Employees pursuant to C.R.C.P. 23.

163. Core's conduct violates the CWCA. *See* C.R.S. §§ 8-4-101, *et seq*.

164. At all relevant times, Core was subject to the CWCA because Core was (and is) an "employer" within the meaning of the CWCA. *See* C.R.S. § 8-4-101(6).

165. At all relevant times, Core employed Nelson and the other Hourly Employees as its covered "employees" within the meaning of the CWCA. *See* C.R.S. § 8-4-101(5).

166. The CWCA requires employers, like Core, to pay employees, including Nelson and the other Hourly Employees, all wages earned, due, and owing on their regular paydays and following termination of their employment. *See* C.R.S. §§ 8-4-103(1)(a) and 8-4-109(1).

167. Core violated the CWCA by failing to pay Nelson and the other Hourly Employees all earned wages for all the hours of work they performed for Core, including overtime wages at the required rate, and hours worked "off the clock" before and after their scheduled shifts, and for "meal periods" and "rest periods" that Core failed to authorize, permit, and/or make available, for which Core failed to compensate Nelson and the other Hourly Employees. *See* C.R.S. §§ 8-4-103(1)(a) and 8-4-109(1); 7 C.C.R. 1103-1(4.1.1, and 5).

168. Core's unlawful conduct harmed Nelson and the other Hourly Employees by depriving them of the earned wages they are owed.

169. Accordingly, Nelson and the other Hourly Employees are entitled to recover their unpaid earned wages and an automatic penalty in the amount of two times the amount of the unpaid wages or compensation or $1,000, whichever is greater. *See* C.R.S. § 8-4-109(3).

170. Because Core's failure to pay these earned wages was willful, Core is also liable to Nelson and the other Hourly Employees for treble damages in the amount of three times their unpaid earned wages or $3,000, whichever is greater. *See* C.R.S. § 8-4-109(b)(II).

171. Finally, Nelson and the other Hourly Employees are entitled to recover their reasonable attorneys' fees, costs, and expenses incurred in this action. *See* C.R.S. § 8-4-110.

### COUNT IV
### CIVIL THEFT OF WAGES
### (CLASS ACTION)

172. Nelson brings his civil theft claim on behalf of himself and the other Hourly Employees pursuant to C.R.C.P. 23.

173. At all relevant times, Core was subject to the CWCA because Core was (and is) an "employer" within the meaning of the CWCA. *See* C.R.S. § 8-4-101(6).

174. At all relevant times, Core employed Nelson and the other Hourly Employees as its covered "employees" within the meaning of the CWCA. *See* C.R.S. § 8-4-101(5).

175. Core knew it failed to pay Nelson and the other Hourly Employees minimum wage and overtime because Core knew they performed work for Core's benefit "off the clock" before and

after their scheduled shifts and during "meal periods" and "rest periods" that Core failed to authorize and/or permit, for which Core failed to compensate Nelson and the other Hourly Employees.

176. Core's knowing failure to pay minimum wage under the CMWA, constitutes theft pursuant to C.R.S. § 18-4-401. *See* C.R.S. § 18-6-116.

177. As a result, Core's failure to pay minimum wage constitutes civil theft pursuant to C.R.S. § 18-4-405.

178. Accordingly, Nelson and the other Hourly Employees are entitled to the greater of $200 or treble damages. *See* C.R.S. § 18-4-405.

179. Nelson and the other Hourly Employees are also entitled to attorney's fees, costs, statutory interest, and all other relief deemed appropriate by the Court. *See* C.R.S. § 18-4-405.

## JURY DEMAND

180. Nelson demands a trial by jury on all Counts.

## RELIEF SOUGHT

WHEREFORE, Nelson, individually and on behalf of the other Hourly Employees, seeks the following relief:

    a. An Order certifying a class action pursuant to C.R.C.P. 23;

    b. An Order appointing Nelson and his counsel to represent the interests of the Hourly Employees;

    c. An Order finding Core liable to Nelson and the other Hourly Employees for the unpaid overtime wages owed under the CWCA, an automatic penalty of the greater of two times the amount of the unpaid wages or compensation of $1,000, plus treble damages in the amount of three times their unpaid wages or $3,000, whichever is greater;

    d. An Order finding Core liable to Nelson and the other Hourly Employees for their unpaid earned wages owed under the CWCA, an automatic penalty of the greater of two times the amount of the unpaid wages or compensation or $1,000, plus treble damages in the amount of three times their unpaid earned wages or $3,000, whichever is greater;

    e. An Order finding Core liable to Nelson and the other Hourly Employees for their unpaid minimum wages owed under the CMWA, plus interest;

       f.       Judgment awarding Nelson and the other Hourly Employees all unpaid earned wages, unpaid minimum wages, unpaid overtime wages, liquidated damages, treble damages, statutory damages, and any other penalties available under Colorado law;

       g.       An Order awarding attorneys' fees, costs, and expenses;

       h.       An Order awarding pre- and post-judgement interest at the highest applicable rates; and

       i.       Such other and further relief as may be necessary and appropriate.

| | |
|---|---|
| Dated: April 15, 2025 | Respectfully submitted,<br><br>**BRIAN D. GONZALES PLLC**<br><br>By: */s/ Brian D. Gonzales*<br>Brian D. Gonzales<br>2580 East Harmony Road, Suite 201<br>Fort Collins, Colorado 80528<br>Phone: (970) 214-0562<br>bgonzales@coloradowagelaw.com<br><br>Michael A. Josephson*<br>Andrew W. Dunlap*<br>**JOSEPHSON DUNLAP LLP**<br>11 Greenway Plaza, Suite 3050<br>Houston, Texas 77046<br>Phone: (713) 352-1100<br>Fax:     (713) 352-3300<br>mjosephson@mybackwages.com<br>adunlap@mybackwages.com<br><br>Richard J. (Rex) Burch*<br>**BRUCKNER BURCH PLLC**<br>11 Greenway Plaza, Suite 3025<br>Houston, Texas 77046<br>Phone: (713) 877-8788<br>Fax:     (713) 877-8065<br>rburch@brucknerburch.com<br><br>*Pro hac vice applications forthcoming*<br><br>**ATTORNEYS FOR NELSON & THE HOURLY EMPLOYEES** |